IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TILMAN DUNBAR, JR., et al.        :

       :

    v.               :    Civil Action No. DKC 20-0738

       :

CORPORAL R. BIEDLINGMAIER,
et al.                 :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this civil rights action is the motion to dismiss filed by Defendants Corporal Ryan Biedlingmaier ("Corporal Biedlingmaier"), the Montgomery County Police Department ("MCPD"), and Montgomery County, Maryland ("Montgomery County") (collectively "Defendants").  (ECF No. 54). The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted.

## I.  Background

These following facts are alleged in Plaintiffs' second amended complaint, ECF No. 45, unless otherwise stated.  Plaintiff Tilman Dunbar, Jr., is a licensed attorney residing in Virginia with his wife and co-Plaintiff, Bindu M. Dunbar ("Mrs. Dunbar"). Kaiser Permanente was Plaintiff Tilman Dunbar, Jr.'s health insurance provider, and was privy to his personal health information.

Tilman Dunbar, Jr., shares a nearly identical name with his nephew, Tilman Dunbar. At the time of the relevant events, Tilman Dunbar worked at Kaiser as an independent contractor. Tilman Dunbar is believed to have stolen computers from Kaiser's technology facility in Silver Spring, Maryland on multiple occasions throughout January 2017. The computers were collectively worth approximately $175,400.00. The thefts were captured on Kaiser's video surveillance cameras and were subsequently reviewed by Kaiser personnel. A Kaiser employee, identified by Plaintiffs as John Doe, attempted to obtain Tilman Dunbar's information through Kaiser's employee database. Due to Tilman Dunbar's classification as an independent contractor, however, his information was not contained in Kaiser's employee database. Thus, John Doe accessed Kaiser's subscriber database in search of Tilman Dunbar's information. The subscriber database did not contain any information on Tilman Dunbar, leading John Doe to access Tilman Dunbar, Jr.'s personal information instead. John Doe then reported the thefts to the Montgomery County Police Department and disclosed Tilman Dunbar, Jr.'s personal information to Corporal Ryan Biedlingmaier, an officer with the MCPD. Acting upon the information obtained from Kaiser and his personal viewing of the surveillance footage, Corporal Biedlingmaier procured a Maryland arrest warrant and a Virginia search warrant for Tilman Dunbar, Jr., and his Woodbridge, Virginia residence rather than

2

for Tilman Dunbar and his Reston, Virginia residence.  On the morning of January 25, 2017, Tilman Dunbar, Jr., was arrested outside his home in public view of his neighbors.  The next day, however, January 26, 2017, the charges against Tilman Dunbar, Jr., were entered *nolle prosequi*.[1]

## II.  Procedural Background

Plaintiffs originally filed suit against Kaiser Permanente Insurance Company ("KPIC"), Corporal Biedlingmaier, the MCPD, and Montgomery County in the Circuit Court for Montgomery County, Maryland on January 24, 2020.  (ECF No. 3).  Defendants subsequently removed the case to the United States District Court for the District of Maryland.  (ECF No. 1).  Plaintiffs filed a first amended complaint on December 11, 2020, adding Defendants Kaiser Foundation Health Plan, Inc. ("KFHP") and Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("KFHP-Mid").  (ECF No. 30).  On January 20, 2021, the court ordered dismissal of KPIC with prejudice.  (ECF No. 42).  On March 24, 2021, the court issued an order directing Plaintiffs to clarify inconsistent and contradictory allegations contained in their amended complaint.

---

[1] Plaintiffs' complaint omits several details which Defendants have subsequently provided, and which Plaintiffs' have not challenged.  Specifically, while Corporal Biedlingmaier conducted the initial investigation, other MCPD officers wrote and submitted affidavits to obtain the warrants.  ECF No. 54-2, at 5. Furthermore, Corporal Biedlingmaier released Plaintiffs from any detention at their home upon realizing the mistaken identity.  *Id.* at 11.

(ECF No. 44).  On April 2, 2021, Plaintiffs filed a second amended complaint, clarifying their allegations.  (ECF No. 45).  On April 15, 2021, KFHP, KFHP-Mid, and John Doe Kaiser Employee filed a motion to dismiss Counts V and VI of Plaintiffs' second amended complaint.  (ECF No. 47).  On July 23, 2021, the court granted the motion to dismiss and ordered the dismissal of Count V of Plaintiffs' complaint in its entirety, a portion of Count VI against the Kaiser defendants, and KFHP, KFHP-Mid, and John Doe Kaiser Employee as defendants.  ECF No. 51.

Corporal Biedlingmaier, Montgomery County, and the MCPD have also filed motions to dismiss.  On December 28, 2020, they filed a motion to dismiss the first amended complaint.  ECF No. 33.  On July 23, 2021, the court denied that motion to dismiss as moot. ECF No. 53.  On August 13, 2021, Corporal Biedlingmaier, Montgomery County, and the MCPD filed another motion to dismiss the second amended complaint.  ECF No. 54.

Defendants' current motion to dismiss seeks the dismissal of the remaining counts of Plaintiffs' second amended complaint.  ECF No. 54.  The remaining claims are Count I—Second Degree Assault (asserted only by Tilman Dunbar, Jr.); Count II—False Arrest; Count III—False Imprisonment; Count IV—Violation of 42 U.S.C. § 1983; and Count VI—Negligence.  ECF No. 45.  Defendants first argue that Plaintiffs' claims are barred by the statute of limitations.  In the alternative, they make various arguments that Plaintiffs'

second amended complaint still does not state a claim.  Finally, Defendants move for summary judgment in the alternative.

## III. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021) (reversing a district court's dismissal of a complaint because "we must accept the well-pleaded facts and draw reasonable inferences in favor of the plaintiff").  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'

– 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## IV.  Choice of Laws

The parties dispute whether Virginia or Maryland law applies to this case, and thus whether Maryland's three year or Virginia's two-year statute of limitations applies.  The parties suggest that choice of laws analysis is merely whether Maryland or Virginia law applies.  The analysis, however, is more nuanced than that.  Which state's substantive law and which state's procedural law applies to Plaintiffs' common law claims must be analyzed separately.  Moreover, the statute of limitations that applies to a § 1983 claim also requires separate analysis.

### A. Common Law Claims

The Fourth Circuit has described Maryland's choice of laws analysis for substantive law:

> A federal court sitting in diversity[2] must apply the choice-of-law rules from the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti commissi,* or

---

[2]  The same principle applies when a court exercises supplemental jurisdiction over state law claims.  *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n. 11 (4th Cir. 1983).

> the law of the place of the harm, to determine
> the *applicable substantive law*. *See Naughton
> v. Bankier,* 114 Md.App. 641, 691 A.2d 712, 716
> (1997). Under the First Restatement, the
> place of the harm is defined as "the state
> where the last event necessary to make an
> actor liable for an alleged tort takes place."
> Restatement (First) of Conflict of Laws § 377
> (1934); *see generally* Eugene F. Scoles & Peter
> Hay, *Conflict of Laws* 571 (2d ed.1992)
> (discussing *lex loci delicti*); Robert L.
> Felix, *Leflar in the Courts: Judicial
> Adoptions of Choice-Influencing
> Considerations,* 52 Ark. L.Rev. 35 (1999)
> (surveying states' decisions to move away from
> *lex loci delicti* regime).

*Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (emphasis added).

Maryland law, however, applies its own procedural law. *Lewis v. Waletzky*, 422 Md. 647, 664 (2011) (quoting *Vernon v. Aubinoe*, 259 Md. 159, 162 (1970)). For choice of laws purposes, Maryland law treats statute of limitations as procedural. *Id.*; *Doughty v. Prettyman*, 219 Md. 83, 88 (1959) (applying Virginia substantive law but Maryland statute of limitations where car accident occurred in Virginia but suit was brought in Maryland).

**B. Section 1983 Claim**

While § 1983 provides a federal cause of action, it does not also provide a statute of limitations. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Instead, "federal law looks to the law of the State in which the cause of action arose" to determine the length of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Thus, "[i]n cases brought under Section 1983, we apply

the statute of limitations for personal injuries of the state in which the alleged violations occurred." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Wallace*, 549 U.S. at 387; *Okure*, 488 U.S. at 249-50; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

> Although state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Federal law, in turn, "conform[s] ... to common-law tort principles" for purposes of determining this date. *Id.* "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action" against a defendant—that is, when the plaintiff knows or has reason to know of his injury. *Id.* (internal quotation marks and brackets omitted).

*Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388-89 (4th Cir. 2014).

**V.   Assault**

Plaintiff Tilman Dunbar, Jr., alleges Corporal Biedlingmaier and unnamed MCPD personnel committed a second degree assault upon him when they arrested him. ECF No. 45, at 7. It is not necessary to resolve the choice of law question for this claim. Maryland, as the forum state, would apply Maryland's statute of limitations irrespective of where the alleged assault occurred or which state's substantive law applies.

8

Maryland's statute of limitations for an assault claim is 1-year. Md. Code Ann. Cts.&Jud.Proc. § 5-105; *Magnas v. Perlman*, No. 20-cv-2862-PWG, 2021 WL 915352, at *3 (D.Md. Mar. 10, 2021) (dismissing second degree assault claim that accrued in 2017, but which was brought in 2020, because it was filed after Maryland's one-year assault statute of limitations expired).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Rule 8(c) and is not usually an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.,* 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002). Dismissal, however, is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston— Salem, N.C.,* 85 F.3d 178, 181 (4th Cir. 1996); *see* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

Although Plaintiffs' complaint puzzlingly omits the date of their alleged arrest and detention, the existence of a statute of limitations affirmative defense is logically clear on the face of the amended complaint. The amended complaint states that after

Defendants realized they had the wrong Tilman Dunbar a *Nolle Prosequi* was entered to each of the theft charges on January 26, 2017.  Logically, the arrest and detention had to occur at some time before the entry of *Nolle Prosequi*.  The second degree assault claim was not brought within one year of its accrual and is barred by the statute of limitations.

## VI.  False Arrest and Imprisonment

Plaintiff Tilman Dunbar, Jr., and Plaintiff Bindu M. Dunbar allege claims of false arrest and false imprisonment against Corporal Biedlingmaier and the MCPD.  ECF No. 45, at 7.  Plaintiffs' second amended complaint remains unclear as to precisely what facts they allege in support of any particular claim.  It is likely that they allege that Plaintiff Tilman Dunbar, Jr., was unlawfully detained and arrested by Corporal Biedlingmaier pursuant to the Montgomery County arrest warrant, and that Plaintiff Bindu M. Dunbar was unlawfully detained by Corporal Biedlingmaier pursuant to the Virginia search warrant.

Again it is not necessary to resolve the choice of law question for these two claims because Maryland and Virginia law treats these claims the same.  Under Maryland law, the elements of a claim for false imprisonment and false arrest are identical: (1) deprivation of the liberty of another; (2) without consent; and 3) without legal justification."  *Heron v. Strader*, 361 Md. 258, 264 (2000).  Under Virginia law, there is a single tort of false

10

imprisonment.  *Coughlan v. Jim McKay Chevrolet, Inc., et al.*, 18 Va.Cir. 265, 1989 WL 646497, at *1 (Va.Cir. Nov. 13, 1989) (citing *Sands v. Norvell*, 126 Va. 384, 400 (1919)).  Virginia law requires a plaintiff to prove that his or her "liberty was restrained, either by words or acts that [he or she] would fear to disregard, and that there was no sufficient legal excuse to justify the restraint." *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 114 (2021).

Under the law of both states, a claim for false arrest or false imprisonment cannot be stated when the detention or arrest is pursuant to a facially valid warrant.  The Court of Appeals of Maryland has said "the tort of false imprisonment does not lie where the sole basis for the tort action is an arrest made by a police officer pursuant to a warrant which appears on its face to be valid." *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995). *See also Green v. Brooks*, 125 Md.App. 349, 374 (1999) (describing requirements for false arrest claim); *Ashton v. Brown*, 339 Md. 70, 120 (1995) ("An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper.").  Both the Court of Appeals and the Court of Special Appeals of Maryland have favorably quoted the Restatement (Second) of Torts in evaluating false arrest and imprisonment. *Wilson*, 339 Md. 701, 726; *Green*, 125 Md.App. at 374 (quoting

Restatement (Second) of Torts for definition of valid warrant).

Section 123 of the Restatement (Second) of Torts states:

> A warrant is valid if
>
>> (a) it is regular in form, and
>>
>> (b) it is issued by a court, body, or official
>>
>>> (i) having authority to issue the warrant for the conduct for which it is issued and which is described therein, and
>>>
>>> (ii) having jurisdiction over the person sufficiently named or otherwise described therein, and
>>
>> (c) all proceedings required for the proper issuance of such a warrant have duly taken place.

Comment (a) to § 123 states:

> A warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged. The guilt or innocence of the accused is not a matter which concerns the officer. It is his duty to serve the warrant and he is privileged to do so, even though he has reason to believe or even knows that the person for whose arrest the warrant is issued is in fact innocent of the offense with which he is charged.

Restatement (Second) of Torts § 123 (1965). *Cf. Wilson*, 339 Md. at 725 ("By invoking the machinery of the independent judicial system, therefore, the [person who falsely sought a warrant] insulates himself from liability for false imprisonment. By the same token, however, he may become liable for malicious

12

prosecution."); Restatement (Second) of Torts § 45A Comment (b) ("One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution, as stated in Chapter 29, or for abuse of process, as stated in Chapter 31, but he is not liable for false imprisonment, since no false imprisonment has occurred.").

The Supreme Court of Virginia has similarly stated that "a plaintiff cannot maintain an action for false imprisonment because of an arrest pursuant to a regular and valid warrant[.]" *Dill*, 300 Va. at 114. *See also Montanile v. Botticelli*, No. 1:08cv716, 2008 WL 5101775, at *4 (E.D.Va. Nov. 25, 2008) ("A warrant that is regular on its face—*even one procured without probable cause*—does not create a cause of action for false imprisonment.") (citing *Cole v. Eckerd Corp.*, 54 Va.Cir. 269, 2000 WL 33595085, at *2 (Va.Cir. 2000)) (emphasis added).

Plaintiff Tilman Dunbar, Jr., has not stated a claim for false arrest or false imprisonment under the law of either state because he has not pleaded that the arrest warrant in this case was not a facially valid warrant.[3]  Instead, he alleges that he was falsely

---

[3] Elsewhere, in support of his § 1983 claim, Plaintiff Tilman Dunbar, Jr., alleges that Corporal Biedlingmaier "falsely obtained a fraudulent and erroneous search and arrest warrant for Plaintiff Attorney Tilman Dunbar, Jr."  That, however, is a legal conclusion unsupported by factual allegations.

arrested and imprisoned because Corporal Biedlingmaier knew or should have known from viewing the Kaiser Permanente surveillance footage that Tilman Dunbar, Jr., was not the individual in the footage.[4]  ECF No. 45, at 6-7.  That allegation does not challenge the facial validity of the arrest warrant.  *See Green*, 125 Md.App. at 373-74 (1999) (affirming summary judgment for police officers who were sued for false imprisonment for arresting plaintiff pursuant to a facially valid warrant which in fact should have been issued for plaintiffs' cousin, and where plaintiffs argued

---

[4] The video, ECF No. 54-6, was submitted only on a flash drive.  It is not available in the electronic record but was viewed by the court on a separate computer.  The court may consider the surveillance video in ruling on the motion to dismiss because it is integral to and relied upon by Plaintiffs' complaint, and Plaintiffs' do not dispute its authenticity.  ECF No. 45, at *Blankenship v. Manchin*, 471 F.3d 523, 526 n1 (4th Cir. 2006); *see also* Thompson v. Badgujar, No. 20-cv-1272-PWG, 2021 WL 3472130, at *3 (D.Md. Aug. 6, 2021) (considering body-worn camera footage in police shooting case and stating that "when, as here, a document or video is referenced as integral to the complaint, disputes between the allegations of the complaint and what is plain from the video are resolved in favor of the video").  The video footage contradicts Plaintiffs' allegations that it was clear that the person in the video is not Plaintiff Tilman Dunbar, Jr., because of that person's height and facial hair.  The two videos purporting to show the suspect show a Black man with facial hair walking through an office building.  The camera footage is looking down from an angle.  The suspect never stands next to another person, which would have permitted a comparison of heights.  *See Sanders v. City of New York*, No. 12 CV 113(PKC)(LB), 2015 WL 1469514, at *9 (E.D.N.Y Jan. 7, 2015) (finding reasonable jury could have ruled out plaintiff as suspect because suspects in surveillance footage were same height as people around them, and plaintiff was 6'6").  It is also not clear to what extent the suspect has facial hair.  The camera angle, footage quality, and fact that the suspect is wearing a hooded sweatshirt with the hood raised make it difficult to determine the full extent of the suspect's facial hair.

police should have done more investigation before executing
warrant); *Dill*, 300 Va. at 114 (affirming dismissal of false
imprisonment claim where store employee had mistaken plaintiff for
shoplifter on surveillance footage but arrest warrant for
plaintiff issued based on employee's report was facially valid).

Plaintiff Bindu M. Dunbar has likewise not stated a claim for
false imprisonment or false arrest under the law of either state.
She has not pleaded that the search warrant was facially
invalid.  Moreover, a search warrant permits detention of the
occupant of a house when the search warrant is executed. *Michigan
v. Summer*s, 452 U.S. 692, 705 (1981) ("[W]e hold that a warrant to
search for contraband founded on probable cause implicitly carries
with it the limited authority to detain the occupants of the
premises while a proper search is conducted."); *Fields v. State*,
203 Md.App. 132, 141 (2012); *Whitaker v. Commonwealth*, 37 Va.App.
21, 31 (2001).

Neither Plaintiff Tilman Dunbar, Jr. nor Plaintiff Bindu M.
Dunbar has stated a claim for false arrest or false imprisonment
under Maryland or Virginia law against Corporal Biedlingmaier and
the MCPD.  Defendants' motion to dismiss will be granted on these
claims.

## VII. Section 1983 Claim

Plaintiffs' § 1983 claim also remains imprecise and
unclear.  The second amended complaint states that Corporal

Biedlingmaier, acting under color of state law and within the scope of his employment as a member of the MCPD:

> (1) Falsely arrested Plaintiff Attorney Tilman Dunbar, Jr. and detained Plaintiff Bindu M. Dunbar;
>
> (2) Falsely obtained a fraudulent and erroneous search and arrest warrant for Plaintiff Attorney Tilman Dunbar, Jr.;
>
> (3) Falsely imprisoned and restrained Plaintiffs' freedom;
>
> (4) Illegally, falsely, unjustly, unfairly, and unconstitutionally violated Plaintiffs' civil rights in violation of Section 1983.

ECF No. 45, at 9.

The court assumes Plaintiffs to be asserting that (1) their seizures by Corporal Biedlingmaier were unlawful under the Fourth Amendment to the United State Constitution and (2) the arrest and search warrants in this case were not supported by probable cause because of something Corporal Biedlingmaier did in securing the warrants. False arrest and false imprisonment claims brought under § 1983 are typically interpreted to allege "a seizure of the person in violation of the Fourth Amendment." *See Rogers v. Pendleton*, 249 F.3d 279, 294 (4ᵗʰ Cir. 2001). *See also Brooks*, 85 F.3d 178, 182 (4ᵗʰ Cir. 1996) ("[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to the common-law tort of malicious prosecution."); *Evans v.*

16

*Chalmers*, 703 F.3d 636, 650 (4ᵗʰ Cir. 2012) (analyzing whether plaintiffs stated claim for unlawful seizure of physical evidence in which they asserted police seized evidence pursuant to a state non-testimonial order which had been obtained with dishonest supporting affidavits). *See also Latimer v. Jones*, No. 18-cv-2243-PX, 2019 WL 2142537 at *5 (D.Md. May 16, 2019) (evaluating whether plaintiff stated claim that Fourth Amendment rights were violated by falsifying evidence to obtain a search warrant).

Stating a § 1983 claim for a malicious-prosecution-type violation of the Fourth Amendment requires a plaintiff to show the defendant (1) caused; (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause; and (3) criminal proceedings terminated in plaintiff's favor. *Evans*, 703 F.3d at 647. For such claims, the Fourth Circuit has imported the *Franks v. Delaware* analysis to evaluate whether an arrest warrant was unsupported by probable cause:

> A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a "reckless disregard for the truth" made material false statements in the warrant application, *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), or omitted from that application "material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading," *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (citation omitted).
> . . .

17

> Moreover, a plaintiff must demonstrate that
> the false statement or omission is material,
> "that is, 'necessary to the [neutral and
> disinterested magistrate's] finding of
> probable cause.'" Id. at 628 (quoting *Franks*,
> 438 U.S. at 156, 98 S.Ct. 2674). To determine
> materiality, the Court must "excise the
> offending inaccuracies and insert the facts
> recklessly omitted, and then determine whether
> or not the corrected warrant affidavit would
> establish probable cause." Id. (quoting
> *Wilson*, 212 F.3d at 789).

*Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017) (evaluating whether evidence supported plaintiff's allegation of malicious prosecution under § 1983 where police officers were alleged to have included false statement in affidavit for arrest warrant). The same requirements apply to claims challenging search warrants. *See Evans*, 703 F.3d at 650 (reciting requirements of an intentional or reckless false statement or omission that is material) *(quoting* Miller, 475 F.3d at 628).

The Fourth Circuit has explained reckless disregard:

> "Reckless disregard" can be established by
> evidence that an officer acted "with a high
> degree of awareness of [a statement's]
> probable falsity," that is, "when viewing all
> the evidence, the affiant must have
> entertained serious doubts as to the truth of
> his statements or had obvious reasons to doubt
> the accuracy of the information he reported."
> *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir.
> 2000) (internal quotation marks omitted); *see
> also, Forest v. Pawtucket Police Dept.,* 377
> F.3d 52, 58 (1st Cir.2004); *United States v.
> Clapp,* 46 F.3d 795, 801 n. 6 (8th Cir.1995).
> With respect to omissions, "reckless

18

> disregard" can be established by evidence that
> a police officer "failed to inform the
> judicial officer of facts [he] knew would
> negate probable cause." Beauchamp v. City of
> Noblesville, Inc., 320 F.3d 733, 743 (7th Cir.
> 2003); see also Wilson, 212 F.3d at 788; United
> States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.
> 1993). *A plaintiff's "allegations of*
> *negligence or innocent mistake" by a police*
> *officer will not provide a basis for a*
> *constitutional violation*. Franks, 438 U.S. at
> 171, 98 S.Ct. 2674.

*Miller v. Prince George's Cty., MD*, 475 F.3d 621, 627–28 (4th Cir. 2007) (emphasis added).

Plaintiff Tilman Dunbar, Jr.'s claim appears to be for malicious prosecution due to the arrest (and search) warrant and Plaintiff Bindu M. Dunbar's claim of necessity arises only from the search warrant. The precise classification of the claims, however, need not be determined now. Central to both claims is the allegation that a warrant was not supported by probable cause. Both Plaintiffs have failed to support such an allegation with facts.

Plaintiffs only allege that Corporal Biedlingmaier, upon viewing the surveillance footage, should have known the person on the video did not match the biographical data of Plaintiff Tilman Dunbar, Jr. ECF No. 45, at 6. This is not an allegation that Corporal Biedlingmaier intentionally or recklessly fabricated or omitted a fact during the application process for the arrest and search warrants. At most, it is an allegation that Corporal

Biedlingmaier made a "negligen[t] or innocent mistake" when
viewing evidence. *See Payne v. City of Laurel, et al.*, No. 07-
cv-583-RDB, 2009 WL 1871258, at *10 (D.Md. June 29, 2009) (finding
failure to notice evidence which would have established that
plaintiff was not lying about living in community was possibly a
negligent mistake, but was not deliberate or reckless disregard
for the truth).

In their motion papers, but not in the § 1983 section of the
Second Amended Complaint itself, Plaintiffs bemoan the manner in
which their detentions were carried out, possibly implying that
excessive force was used. A claim of excessive force used during
an arrest invokes the protections of the Fourth Amendment. *Graham
v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443
(1989). Similarly, use of unnecessary force or restraints during
the execution of a search warrant would violate the Fourth
Amendment. *Muehler v. Mena*, 544 U.S. 93, 99 (2005); *Los Angeles
Cty., CA v. Rettele*, 550 U.S. 609, 614 (2007). Unlike the § 1983
claims discussed above, which either involved conduct in Maryland
or required the *nolle prosequi* to be viable, any excessive force
claim would necessarily have occurred in Virginia and its statute
of limitations would apply. See, e.g., *Tanksley v. Rose*, Civil
Action No. 3:19cv229-HEH, 2019 WL 6709386 (Dec. 9, 2019). The
Virginia statute of limitations is two years and this suit was
initiated more than two years after the events in Virginia. Thus,

20

even had Plaintiffs asserted an excessive force claim, it would
not be able to proceed.  They waited too long to file suit.

Count 4 will be dismissed.

**VIII.    Negligence**

Both Plaintiffs allege a claim of simple negligence against
Corporal Biedlingmaier and MCPD.  A choice of laws decision is not
necessary here because neither Maryland nor Virginia law would
recognize such a claim.

Maryland law would not recognize Plaintiffs' negligence claim
for several reasons.  First, police officers are entitled to public
official immunity.  Public official immunity is a legal defense
available to certain limited classes of local government
employees.  *Dipino v. Davis*, 354 Md. 18, 729 A.2d 354 (Md. Ct.
App. 1999).

> In accordance with the doctrine of public
> official immunity, a governmental actor enjoys
> a certain public official immunity for his or
> her non-malicious acts if it is determined
> that: (1) he is a "public official," and (2)
> his tortious conduct occurred while he was
> performing discretionary acts in furtherance
> of his duties. *Ashburn v. Anne Arundel County*,
> 306 Md. 617, 622, 510 A.2d 1078 (Md. Ct. App.
> 1986) (quoting James v. Prince George's
> County, 288 Md. 315, 418 A.2d 1173 (Md. Ct.
> App. 1980)).  Law enforcement officers are
> public officials for the purposes of public
> official immunity. *Cooper v. Rodriguez*, 443
> Md. 680, 727, 118 A.3d 829 (Md. Ct. App. 2015).
> The public official immunity police officers
> enjoy in accordance with the doctrine frees
> them from suit for their alleged negligent
> acts.  However, there is no immunity for any

21

>     alleged intentional torts or any alleged acts
>     committed with actual malice. *Ashton v.
>     Brown*, 339 Md. 70, 118, 660 A.2d 447 (1995).

*McGowan v. Prince George's Cty., Maryland*, 401 F.Supp.3d 564, 571-72 (D.Md. 2019). "Actual malice is established by proof that the officials intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Owen-Williams v. City of Gaithersburg*, No. 10-cv-185-PJM, 2011 WL 53082, at *5 (D. Md. Jan. 7, 2011) (citing *Elliott v. Kupferman*, 58 Md.App. 510, 526 (1999)). Gross negligence can also defeat Maryland's public official immunity. *Johnson v. Baltimore Police Dept.*, 452 F.Supp.3d 283, 298 (2020). Gross negligence is defined as

>     [A]n intentional failure to perform a manifest
>     duty in reckless disregard of the consequences
>     as affecting the life or property of another,
>     and also implies a thoughtless disregard of
>     the consequences without the exertion of any
>     effort to avoid them. Stated conversely, a
>     wrongdoer is guilty of gross negligence or
>     acts wantonly and willfully only when he [or
>     she] inflicts injury intentionally or is so
>     utterly indifferent to the rights of others
>     that he [or she] acts as if such rights did
>     not exist.

*Cooper v. Rodriguez*, 443 Md. 680, 708 (2015).

Second, county police departments are not separate entities subject to suit. County police departments are agents of the governmental entity and should not be viewed as separate legal

entities. *Hines v. French*, 157 Md. App. 536, 573, (2004). *See also Rhodes v. Montgomery Cnty. Dept. of Corrections and Rehabilitation*, No. 12-cv-03172-AW, 2013 WL 791208, at *6 (D.Md. Mar. 1, 2013) (dismissing MCPD from lawsuit).

Third, counties have governmental immunity for tortious acts of their employees, when the county is acting in its governmental capacity. *DiPino*, 354 Md. at 47-48. "The operation by a county of its police department is quintessentially governmental." *Clark v. Prince George's Cnty.*, 211 Md.App. 548, 558 (2013). *See also Devi v. Prince George's Cnty.*, No. 16-cv-3790-DKC, 2017 WL 3592452, at *2 (D.Md. Aug. 21, 2017) (reciting "deeply ingrained" principles of governmental immunity in Maryland law and finding tort claims against county for actions of police officers were barred). Governmental immunity includes intentional tort claims based on *respondeat superior*. *Gray-Hopkins v. Prince George's Cnty., Maryland*, 309 F.3d 224, 234 (4th Cir. 2002) ("[Prince George's County] enjoys governmental immunity with respect to the claims that seek to impose *respondeat superior* liability for an intentional tort committed by [defendant police officer.]") (citing *DiPino*, 354 Md. at 47). *See also Bearnarth v. Montgomery Cnty., Md.*, No. 09-cv-0501-DKC, 2009 WL 10685439, at *5 (D.Md. June 18, 2009) (finding fact that defendant police officer was not entitled to public official immunity with respect to intentional torts committed with malice, or that defendant county might have

23

to indemnify or pay judgment, did not mean county was without governmental immunity with respect to direct liability for the same torts).

Maryland law would not recognize a claim against Corporal Biedlingmaier because he is protected by public official immunity, and Plaintiffs have not alleged that Corporal Biedlingmaier acted with malice—that he acted intentionally or deliberately to injure them.[5]  Maryland law would also not recognize Plaintiffs' claim against the MCPD because the MCPD is a subordinate agency of Montgomery County and thus not an entity subject to suit.  *See* Montgomery County Code §§ 1A-201 and 2-43.  Finally, Maryland law would not recognize Plaintiffs' claim against Montgomery County because (1) they have alleged no claim against Montgomery County

---

[5] Likewise, Plaintiffs have not pleaded gross negligence. While Plaintiffs assert the bald legal conclusion that Corporal Biedlingmaier acted "recklessly," they have supplied no factual allegations to support this conclusion.  At best, they have alleged that Corporal Biedlingmaier should have drawn a different conclusion from reviewing the surveillance footage.  Under neither Virginia nor Maryland law does such a discretionary decision support the kind of intentional disregard or recklessness necessary to support an allegation of gross negligence.  *See Nero v. Mosby*, 890 F.3d 106, 129 (4th Cir. 2018) (holding plaintiffs' facts did not support gross negligence where the facts did not show that defendant knew that her statements were false, and that plaintiffs' mere disagreement with conclusions defendant drew from evidence while investigating plaintiffs did not show a reckless disregard of plaintiffs' rights); *Muse v. Schleiden*, 349 F.Supp.2d 990, 1001 (E.D.Va. 2004) (denying motion to amend and add gross negligence claim for futility where police officer mistook color of traffic light because he did not look directly at it and thus caused traffic accident).

and (2) they only allege claims based on the actions of Montgomery County's police officers.   Thus, Montgomery County would have governmental immunity.

Under Virginia law, counties and county police departments have sovereign immunity. *Ligon v. Cnty. of Goochland*, 279 Va. 312, 316 (2010) ("The same [sovereign] immunity principles apply to counties, which are political subdivisions of the Commonwealth."); *Harrison v. Prince William Cnty. Police Dept.*, 640 F.Supp.2d 688, 712 (2009) (finding sovereign immunity barred plaintiff's state law claims against Prince William County and the Prince William County Police Department because the alleged negligent acts and intentional torts committed by police officers were committed while officers were executing a search warrant— *i.e.*, performing police duties).   Sovereign immunity immunizes counties for both negligence and intentional torts committed by their employees. *See, e.g.*, *Niese v. City of Alexandria*, 264 Va. 230, 239-40 (2002) (holding municipalities immune from liability for negligence associated with performance of "governmental" functions, and from liability for intentional torts committed by an employee during the performance of a governmental function). Virginia law extends sovereign immunity to individual police officers depending on the four *Messina* factors:

> (1)   The nature of the function performed by the employee;

> (2)   The extent of the state's interest and involvement in the function;
>
> (3)   The state's degree of control and direction over the employee; and
>
> (4)   Whether the alleged act involved the use of judgment and discretion.

*Shafer v. Virginia*, No. 6:20-cv-000044, 2021 WL 1156859, at *3 (W.D.Va. Mar. 26, 2021) (quoting *Messina v. Burden*, 228 Va. 301, 313 (1984)).   Courts have repeatedly found that police officers conducting official investigations and executing arrests meet these requirements.   See *Shafer*, 2021 WL 1156859, at *3 (finding all four *Messina* factors met where police officers were carrying out their duties investigating crimes and executing arrests); *Booker v. City of Lynchburg*, No. 6L20-cv-00011, 2020 WL 4209057, at *5 (W.D.Va. July 22, 2020) (granting motion to dismiss on simple negligence claim asserted against city police officers); *Cromartie v. Billings*, 298 Va. 284, 297-98 (finding *Messina* factors met when officer executed arrest and that police officer would have been entitled to sovereign immunity had the claim alleged against him been simple negligence).   "Virginia's sovereign immunity doctrine protects officers only for simple negligence."   *Cromartie*, 298 Va. at 297 (2020).

Virginia law would not recognize Plaintiffs' claim because of sovereign immunity.   Moreover, Virginia would apply Maryland immunity doctrines.   *See Catholic Diocese of Arlington Virginia v.*

*Commonwealth Transp. Com'r*, 74 Va.Cir. 154 (2007) (applying Maryland sovereign immunity in Virginia court as matter of comity); *cf. Franchise Tax Bd. of California v. Hyatt*, 139 S.Ct. 1485, 1492 (2019) ("We . . . hold that States retain their sovereign immunity from private suits brought in the courts of other States). Even if Virginia law did not do so, Maryland choice of law analysis would treat immunity law as procedural, and not substantive. *Marks v. Dann*, No. 13-cv-0347-DKC, 2013 WL 8292331, at *9 (D.Md. July 24, 2013) (finding based on analysis of Maryland law that "even if a plaintiff's tort causes of action arise under another jurisdiction's law, a Maryland court would apply Maryland law to determine whether a State employee was entitled to immunity[,]" because statutory immunity is a threshold matter of whether the court is open to a particular litigant).

Accordingly, Montgomery County and the MCPD are immune from suit. Corporal Biedlingmaier would likewise be immune because he was executing search and arrest warrants in his capacity as a Montgomery County police officer, and because Plaintiffs have only alleged a claim of negligence. Thus, neither Maryland nor Virginia law would recognize Plaintiffs' claim for negligence. The negligence claim will be dismissed.

## IX.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted. Plaintiffs have had several opportunities to clarify

and plead their claims.   Many of the issues resolved in this
Memorandum were raised in response to the first amended complaint
and Plaintiffs failed to remedy the defects in the second amended
complaint.   They have not sought leave to amend in their response
to this motion to dismiss.   Accordingly, the dismissal is without
leave to amend.

                                        /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge